105    647
r203s  492

## Chicago & Eastern Illinois R. R. Co. v. Charles J. Heerey, Adm'r.

1. PROXIMATE CAUSE—*Defined.*—The proximate cause is that cause which stands next in causation to the effect, not necessarily in time or effect, but in causal relation.

2. DAMAGES—*When $5,000 is Not Excessive.*—Deceased, a fireman on a switch engine, twenty-two years of age, was killed by reason of the separation of the engine and the tender, caused by the breaking of a defective coupling pin. He left surviving him his mother, who not only had been for years and was at the time of his death, living with and being supported by him, but under section 1, chapter 107, of the Revised Statutes, was entitled to be supported by him, if she were poor and unable to earn a livelihood by reason of an unavoidable cause. *Held,* that $5,000 damages for his death is not excessive.

3. FELLOW-SERVANTS—*When Engineer and Fireman of a Switch Engine Are Not.*—An engineer of a switch engine who neglects to attach the safety chains connecting the engine and tender, is not, as to such matter, a fellow-servant of the fireman who had been at work with him only since the morning of the day of the accident.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge ·presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 30, 1903.

WILL H. LYFORD and K. M. LANDIS, attorneys for appellant; ALBERT M. CROSS, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

In this case appellee obtained a judgment against appellant for $5,000, because of its alleged negligence in causing the death of Joseph Heerey.

The deceased was acting as an extra fireman upon appellant's switch engine number 211, and was killed on the evening of October 21, 1898, by falling between the tender and engine while in motion, being run over by the tender. His fall was caused by the separation of the engine and tender as the train was running, such separation being

due to the breaking of a drawbar pin and the absence of any chains connecting the engine and tender.

At the time of the separation he was standing with one foot on the engine, the other on the tender, and was shoveling coal into the locomotive furnace.

The declaration contained counts, some of which charged that appellant was negligent in providing a defective pin by which the drawbar between the engine and tender was attached to the former. Other counts charged that appellant was negligent in failing to provide, as is customary, chains holding the engine and tender together, so that they will not separate in case of any breakage of the coupling drawbar or its connecting pins. That the chains used for holding the engine and tender together were not fastened and were consequently useless at the time of the accident, is admitted. It is not disputed that one of the pins by which the drawbar was held in place, was defective, but it is insisted by defendant that such defect, being due to the crystallization of the iron, was- undiscoverable by reasonable examination, indeed, without breaking the pin.

The court instructed the jury that there could be no recovery upon the counts of the declaration which charged that the defendant was negligent in supplying a defective coupling pin. Appellee insists that in so doing the court erred; that the evidence showed that the defect in the coupling pin was of such a character that it could have been discovered by the defendant by a reasonable and practicable examination; that the jury so found and that such verdict of the jury as to this matter is sustained by the evidence. We can not assent to this contention. However true it may be that jurors are but little influenced by, and ordinarily fail to understand the multitudinous written instructions given to them, theoretically such is not the case, and a jury must be presumed to have understood and obeyed instructions of the court that under certain counts there can be no recovery, unless it appears from the record that it did not.

The question of the alleged negligence of the defendant

in supplying a defective coupling pin was not submitted to the jury, consequently it must be presumed that no verdict was rendered thereon.

Appellant insists that the proximate and sole cause of the accident was the defective coupling pin. That the accident would not have happened had the chains been in use is clear. That they were designed to and ordinarily were in position so as to have prevented such an accident is admitted.

It appears that when the engine went out on the morning of the day of the accident, an attempt was made by the engineer to couple these chains, but for some reason the tender was standing so high that the hook of the chain could not be made to reach into the eye; that is, the engine and tender not standing at an even height, the chains were a little too short. Several attempts were made during the day to couple these safety chains, but without success. It appeared that there was upon the engine, apparatus such as jacks, screws and levers, by which, it is claimed, the engine might have been raised so that the chains could be fastened, and it is insisted by appellant that the deceased was negligent in not doing this. As is common knowledge, the fireman, in respect to what shall be done with the engine, is under the control of the engineer. There is no evidence showing that the deceased could, without the direction and assistance of the engineer, have raised the engine so as to bring it on a level with the tender, and it is to a considerable degree a conjecture, that had this been done, the chains could have been fastened. The absence of the safety chains was the proximate cause of the accident. The proximate cause is that cause which stands next in causation to the effect, not necessarily in time or effect, but in causal relation. Pullman Palace Car Co. v. Laack, 143 Ill. 242.

It is also urged by appellant that not only was the deceased guilty of contributory negligence in not fastening these chains, but that if the failure to fasten them was the negligence of the engineer, then the engineer was a fellow-servant of the deceased and no recovery can be had because of the negligence of such fellow-servant.

It must be borne in mind that this was not a passenger or freight, but a switch engine; that the engineer was directed by appellant to take said engine out; that the deceased was acting under his orders; that the safety chains were not coupled up when the engine left the round-house on Monday morning; that the engine had been in the round-house from the previous Sunday. It does not appear that it was the duty of the engineer to put the engine in order before taking it out, or to fasten the engine and tender together with the safety chains, although it does appear that the foreman of the round-house from which the engine was taken on Monday morning, it having been there since the previous Sunday, endeavored to couple the chains at the round-house and again at the water-tank. Appellant thus had notice through its round-house foreman that the safety chains were not in place and could not by ordinary effort be put in place, when the engine was sent out for work. Under the circumstances, we do not think that the deceased or the engineer was guilty of contributory negligence in not stopping the engine and making an endeavor by use of jack-screws and levers to bring the engine to a position where the safety chains could be coupled. Nor do we think that if the engineer was negligent in this regard, he was as to such matter at this time a fellow-servant of the deceased. The deceased had been at work with this engineer at the time of the accident only since the morning of the day he was killed.

The deceased left him surviving his mother, with whom he lived, and two brothers, not members of his family. The deceased was a native of Mattoon, Illinois, where he had attended the public and parochial schools. At thirteen he attended a college at Teutopolis, where he graduated when he was seventeen years of age. After leaving college he worked as a fireman on the Big Four Railroad, living with his mother. He afterward worked in the Rock Island and Illinois Central Railroad shops. When he came to Chicago, his mother followed him and they lived together from that time until his death. He was a healthy

man, twenty-two years of age, and very capable. His "boss" said he intended to promote him. His habits were good; he was saving, did not drink, and was very industrious; was a bright, intelligent, unmarried young man. His mother testified that he gave her his earnings. Being asked if she knew what wages he received as a fireman, she said, "He gave me 60—" whereupon she was prevented, by objection, from making further answer. Objection was made to any testimony that he contributed to the support of his mother. Counsel for appellee repeatedly offered to show that he did support his mother, but upon objection conceded that he was of the opinion that under a recent decision of the Supreme Court, such evidence was not admissible. While the testimony of the mother of the deceased that he did give his wages to her was not stricken out, yet the ruling of the court upon objections made to such testimony was such that indirectly such evidence was excluded. That the evidence of support was not given was due to objections made by appellant. Having made this objection in the trial court and succeeded in preventing appellee from showing what he offered to do in this regard, we do not think that appellant can here be heard to insist that the judgment in this case must be reversed, because there was no evidence showing that the mother of the deceased was supported by him. Nor do we think that counsel for appellee waived his question by conceding that under the law it was not proper. It was an honest and manly thing for him to truthfully state his opinion as to the law. A lawyer is not obliged to lie in order to retain the benefit of a question he had asked.

It is insisted that the damages awarded are excessive. It being urged that the mother of the deceased was a collateral relative; that lineal descendants, within the meaning of the rules established under the statute upon which this suit is predicated, are the children of the person from whom descent is traced; that under the common law an estate did not lineally ascend. The statute of descent has changed the rule of the common law, and in this state parents and brothers, as to inheritance, stand on an equality.

The mother of the deceased not only had been for years, and was at the time of his death, living with and being supported by him, but under section 1, chapter 107 of the Revised Statutes, she was entitled to be supported by him, if she were poor and unable to earn a livelihood, by reason of an unavoidable cause.

In Bradley v. Sattler, 54 Ill. App. 504, 156 Ill. 603, a judgment of $5,000 recovered for the benefit of a mother and two brothers, on account of the pecuniary loss by them sustained by reason of the death of a boy twelve years and three months old, was sustained; and this, in the absence of any evidence showing any pecuniary loss; the jury inferring from their experience the amount of such loss, in accordance with the rule enunciated in City of Chicago v. Major, 18 Ill. 349; Chicago & Alton R. R. Co. v. Shannon, 43 Ill. 338-347; City of Chicago v. Scholten, 75 Ill. 468-471; City of Chicago v. Keefe, 114 Ill. 222-230; Ohio & Mississippi Ry. Co. v. Wangelin, 152 Ill. 138-142.

As to the sixteenth and seventeenth instructions asked by appellant, which the court refused to give, these, in effect, would have told the jury that no recovery could be had if the deceased knew before the engine left Oakdale that the safety chains were not fastened.

We have already expressed our opinion as to this. Finding no error requiring a reversal of the judgment in this case, it is affirmed.